A99A0990. BOWEN et al. v. HUNTER, MACLEAN, EXLEY & DUNN et al.

(525 SE2d 744)

BARNES, Judge.

Mrs. Robert Sieg, Sr. and Deborah Sieg Bowen sued attorney John Tatum and the law firm of Hunter, Maclean, Exley & Dunn, alleging that Tatum committed professional malpractice, breach of fiduciary duty, negligence, conspiracy, fraud, and conversion. The plaintiffs, mother and sister of the late Robert Sieg, Jr., based their claims on assertions that Tatum should have given them a copy of Sieg's prenuptial agreement, which allegedly barred his widow from inheriting and would have informed them they were entitled to Sieg's entire estate.

The trial court granted summary judgment to the defendants on plaintiffs' legal malpractice and breach of fiduciary duty claims, because the plaintiffs were never the defendants' clients. The trial court also found that under Georgia law the defendants owed no fiduciary duty to the plaintiffs. The trial court then bifurcated the trial of the remaining issues.

In the first phase of the trial, the jury considered whether the prenuptial agreement was valid. If it found the agreement valid, then in the second phase of the trial the jury would consider whether Tatum and the law firm were liable for failing to disclose its contents. Because the jury concluded that the prenuptial agreement purporting to bar the widow from inheriting anything was invalid, the trial court entered judgment for the defendants.

Plaintiffs appeal, alleging the trial court erred in granting summary judgment to Tatum and the law firm on the plaintiffs' fiduciary claims, in bifurcating the trial, in making certain evidentiary rulings, in denying plaintiffs' motion for directed verdict on the widow's failure to rescind the prenuptial agreement, and in declining to give certain jury charges. For the reasons that follow, we affirm.

In February 1990, Robert Sieg, Jr. fell down a set of stairs in his house and died. He had no children and no will. His widow, Lynne Sieg, hired attorney Tatum to help her administer the estate. The probate court appointed her the estate administrator, and she was discharged from those duties in December 1990.

Although Sieg's mother and sister were aware of the existence of

a prenuptial agreement before the administration was closed, they waited until May 1991, five months after the discharge, to ask Tatum if Sieg had entered into a prenuptial contract with Lynne Sieg. Tatum responded by letter that he was aware of such a contract (he did not draft it), but could not deliver a copy to them without his client's permission, which Lynne Sieg declined to give. In August 1994, three years after receiving Tatum's letter, the decedent's mother and sister sued Lynne Sieg, asserting she had waived her rights as an heir at law in a prenuptial agreement. The widow responded in defense that the mother and sister had no standing to enforce the prenuptial agreement.

The Supreme Court of Georgia disagreed in *Sieg v. Sieg*, 265 Ga. 384 (2) (455 SE2d 830) (1995), holding that the prenuptial agreement "constituted an actual legal settlement under which the rights of the parties vested." (Punctuation omitted.) Id. at 386. Thus, the mother and sister of the decedent had standing to maintain an action against the widow based on the prenuptial agreement. The Supreme Court noted it was not considering the agreement's validity, only the standing issue. Id. at fn. 2. After the case was remitted to the trial court, the parties settled in April 1996, on the eve of trial, agreeing the widow would keep half the estate and give half to the mother and sister.

Nine months after the settlement, in January 1997, the mother and sister sued Tatum and his former law firm, alleging that Tatum should have given them a copy of the prenuptial agreement, or at least told them that they had a potential interest in the estate under that agreement. After numerous motions and orders,[1] including the summary judgment granted to Tatum and his former firm on plaintiffs' claims for malpractice and breach of fiduciary duty, the court bifurcated the trial. The court apparently concluded that the jury had to find the prenuptial agreement valid before the decedent's mother and sister could make any claims against the widow's former lawyer. When the jury concluded the prenuptial agreement was not valid, the trial court entered judgment for the defendants.

1. The decedent's mother and sister contend on appeal that the trial court erred in bifurcating the trial and granting summary judgment to attorney Tatum and his former law firm on the breach of fiduciary duty claims. We disagree.

"Courts are authorized to bifurcate issues to further convenience or avoid prejudice. OCGA § 9-11-42 (b). The decision to bifurcate is reviewed for clear and manifest abuse of discretion." *Whitley v. Gwin-*

---

[1] The index to the pleadings is 25 pages, and the record on appeal contains more than 7,000 pages of pleadings and depositions.

*nett County*, 221 Ga. App. 18, 19 (2) (470 SE2d 724) (1996); *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 368 (1) (b) (508 SE2d 716) (1998).

Tatum and his former firm moved to bifurcate the trial to determine first whether the mother and sister of the decedent were legal heirs who would have prevailed in their underlying suit against the widow but for the allegedly tortious conduct of the widow's former attorney, Tatum. The mother and sister responded that they had a tort claim against Tatum for his failure to disclose the agreement, from which damages flowed "in the form of fees and expenses to force disclosure." The trial court found that, "in order to avoid undue prejudice, the issue of the enforceability and validity of the prenuptial agreement should be tried prior to and separately from Plaintiffs' claims of fraud, conspiracy, conversion, etc." The trial court had previously granted the defendants' motion for summary judgment on plaintiffs' claims of professional malpractice and breach of fiduciary duty, finding that "no attorney/client relationship existed between Plaintiffs and Defendants" and further finding that

> [t]he issue of whether the Plaintiffs were beneficiaries of the estate is a question of fact which hinges on whether or not the prenuptial agreement was valid and enforceable. Genuine issues of material fact remain for jury determination concerning these issues. Regardless of these questions of fact however, the Plaintiffs have conceded in their briefs that "Georgia has not yet specifically addressed whether . . . the attorney [of a fiduciary] otherwise owes a fiduciary duty to the beneficiary."

The court then granted defendants summary judgment on the plaintiffs' claims for breach of fiduciary duty.

Appellants cite no case law or statutes supporting their assertion that they had a tort claim against Tatum for his failure to disclose the "voidable" agreement. Whether the agreement was voidable or void, we decline to create such a tort claim here and hold that the trial court did not abuse its discretion in bifurcating the trial.

2. Sieg's mother and sister assert that the trial court erred in granting summary judgment to Tatum and his former law firm on their fiduciary duty claim. According to the trial court and the parties, Georgia has not addressed the issue of whether the attorney of a fiduciary — such as the administrator of an estate — owes a fiduciary duty in turn to heirs at law. In its order granting summary judgment to Tatum and his former firm on this issue, the trial court concluded that "[t]he issue of whether the Plaintiffs were beneficiaries of the estate is a question of fact which hinges on whether or not the

prenuptial agreement was valid and enforceable."

However, Sieg's mother and sister argue that Tatum had a fiduciary duty to them as potential or possible heirs, regardless of whether they were actual heirs. They argue without citation that "justifiable reliance eliminates the duty to exert due diligence," but again cite no authority supporting that proposition. Further, while they cite cases holding that a fiduciary cannot divert trust property to his own use and that a person helping a fiduciary divert trust property is equally liable (*Hickson v. Bryan*, 75 Ga. 392, 395 (2) (1885); *Ausley v. Cummings*, 145 Ga. 750 (89 SE 1071) (1916)), none of these cases is applicable to this situation, in which no evidence has shown that the widow Sieg, as the administrator of Sieg's estate, diverted property to herself. In fact, the case law addressing a fiduciary's responsibilities deals with situations in which the aggrieved party was an actual party to a fiduciary relationship, not a potential or possible party to the relationship.

> A fiduciary or confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58.

*Kienel v. Lanier*, 190 Ga. App. 201, 203 (378 SE2d 359) (1989); see *Physician Specialists v. Wildmon*, 238 Ga. App. 730, 732 (1) (521 SE2d 358) (1999). The party asserting the existence of a fiduciary or confidential relationship bears the burden of establishing its existence. *Crawford v. Crawford*, 134 Ga. 114, 119 (67 SE 673) (1909). Here, Sieg's mother and sister could not argue that a fiduciary duty arose out of any attorney-client relationship and did not in fact appeal the trial court's summary judgment to Tatum on their legal malpractice claim. See *Guillebeau v. Jenkins*, 182 Ga. App. 225, 231 (1) (355 SE2d 453) (1987) (an attorney-client relationship cannot be created in the mind of a would-be client).

When a fiduciary or confidential relationship is not created by law or contract, we must examine the facts of a particular case to determine if such a relationship exists. *Cochran v. Murrah*, 235 Ga. 304, 306 (219 SE2d 421) (1975). Here, Tatum disclosed the existence of the prenuptial agreement to Sieg's mother and sister at least five years before they filed suit against him and his former firm. Between that disclosure and this suit, Sieg's mother and sister sued his widow and settled with her for half of the estate, which amounted to approximately $1 million. Any allegation that the widow had breached her fiduciary duty as the estate administrator, or that Tatum assisted

her in breaching that duty, could have been raised in this earlier action.

Sieg's mother and sister argue that they trusted Tatum when he told them they had no interest in the prenuptial agreement, and thus he owed them a fiduciary duty. However, we have held that an allegation that a defendant had been a close personal, confidential, and business adviser to the plaintiff did not establish the existence of a confidential relationship within the meaning of OCGA § 23-2-58. *Charles v. Simmons*, 215 Ga. 794, 796 (113 SE2d 604) (1960); see *Parello v. Maio*, 268 Ga. 852, 853 (1) (494 SE2d 331) (1998). That Code section provides that a confidential relationship arises when "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." OCGA § 23-2-58. We conclude that Tatum was not "so situated as to exercise a controlling influence over" Sieg's mother and sister based on the particular facts of this case. The trial court did not err in granting summary judgment to Tatum and his former law firm on the breach of fiduciary duty claims.

3. The appellants argue that the trial court erred in numerous evidentiary rulings, sustaining objections to appellants' cross-examination of Tatum regarding his understanding of the intestacy statute, the date he first gave appellants a copy of the prenuptial agreement, when he disclosed other defenses, and when he thought the statute of limitation began running on appellants' claim. Appellant Bowen was not allowed to testify on direct about whether Tatum told her anything about the statute of limitation. Additionally, the trial court ruled that appellants could not argue in closing that Tatum prevented the appellants from seeing the agreement, finding that those issues would more properly be considered in the trial's second phase, if there were one. Appellants argue that this evidence was relevant to both phases of the trial and thus should not have been excluded in the first phase.

We review a trial court's evidentiary rulings for abuse of discretion. *Nalley Motor Trucks v. Cochran*, 200 Ga. App. 487, 488 (408 SE2d 501) (1991). Here, the trial court's rulings were consistent and logical. While appellants assert in their brief that Tatum's motion in limine to keep out a portion of Lynne Sieg's answer in a previous case "was expanded to include any reference to their alleged tortious conduct and was denied . . . [and] [t]he Trial Court thereby recognized the admissibility of the evidence," the record does not support this contention. The trial court initially denied Tatum's motion in limine to keep out a portion of Lynne Sieg's answer to the appellants' previous suit against her, but noted that it would rule on specific objections as they arose. It proceeded to do so during the course of the

trial. The excluded evidence listed above did not address the prenuptial agreement's validity, and we conclude the trial court did not abuse its discretion in sustaining the objections.

4. Appellants argue that the trial court erred in overruling their objections to the testimony of Lynne Sieg's sister that Bowen, the decedent's sister, admitted after her brother's funeral that she was spoiled and used to getting everything she ever wanted. Appellants also claim as error the admission of a neighbor's testimony that Bowen had asked questions at her brother's wake implying that Lynne Sieg had pushed her husband down the stairs. Tatum responds that the neighbor's testimony contradicted Bowen's testimony in which she denied implying that Lynne Sieg had harmed her husband. Further, Tatum asserts, testimony that Bowen wanted to inherit all of her brother's estate was relevant to establish her interest and bias and to cast doubt on her testimony that her brother's relationship with Lynne Sieg before they signed the prenuptial agreement did not appear to be a common-law marriage.

Again, we review evidentiary rulings for abuse of discretion. *Nalley Motor Trucks v. Cochran*, supra, 200 Ga. App. at 488. Deborah Bowen's credibility was clearly an issue in the first phase of the bifurcated trial, because if her testimony were believed, the jury would have been authorized to conclude that her brother did not have a common-law marriage with Lynne Sieg that would invalidate the prenuptial agreement. "The interest of a witness in the result or outcome of the case, especially where the witness is a party to the cause, may always be considered by the jury in passing upon his or her credibility." *Smith v. Davis*, 203 Ga. 175, 182 (3) (45 SE2d 609) (1947). Bowen's interest as a party in the case is a factor affecting the credibility of her testimony. *Lewis v. American Road Ins. Co.*, 119 Ga. App. 507, 511 (2) (167 SE2d 729) (1969). We conclude that the trial court did not abuse its discretion in overruling the objections.

5. Appellants argue the trial court erred in denying their motion for a directed verdict, brought on the ground that Lynne Sieg failed to rescind the prenuptial agreement once she became aware that it was invalid. Tatum responds that, in order to rescind a contract, the rescinding party must discharge any benefit gained under that contract. The only arguable benefit Lynne Sieg gained under the prenuptial agreement was her ceremonial marriage to the decedent, and she could not "rescind" her marriage once her husband died. Further, he argues, if she already had a common-law marriage, then the prenuptial agreement was invalid and there was nothing to rescind, a point appellants agreed with at trial.

"If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind

such contract." *Brooks v. Hooks*, 221 Ga. 229, 235 (1) (144 SE2d 96) (1965); see also *Tingle v. Harvill*, 228 Ga. 332, 336 (2) (b) (185 SE2d 539) (1971). These cases, however, are factually distinguishable from the case at bar. As Tatum points out, Lynne Sieg could not have discharged any benefit she might have received under the prenuptial agreement, which would have been her marriage at most. The trial court did not err in denying appellants' motion for a directed verdict on this ground.

6. The trial court further did not err in declining to give two of appellants' requests to charge as written. Appellants asked the court to give two charges relating to common-law marriages. "In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citations and punctuation omitted.) *Lee v. Bartusek*, 205 Ga. App. 551 (1) (422 SE2d 570) (1992).

A portion of the first charge not given states that "[d]efendants attempt to attack the validity of a ceremonial marriage between Bobby Sieg and Lynne Warren which took place on December 31, 1997, by asserting the pre-existence of a common law marriage." The charge further explains that if the parties begin living together while one of them is married to someone else, the parties must make a new agreement after the married party is divorced in order to establish a common-law marriage. This charge is not adjusted to the evidence.

While appellants argue in their brief that the evidence "showed the [Siegs'] cohabitation arose from an adulterous relationship," the cite is to the testimony of Sieg's first wife that, while married to her, Sieg had an affair with Lynne. This testimony does not show that the Siegs cohabited during his first marriage; Sieg's first wife testified that she remained married to him for four years after she discovered his relationship with Lynne.

Appellants argue further the trial court should have charged the jury that "[t]he parties to an alleged common law marriage cannot hold themselves out to be married where circumstances would benefit them, and then maintain a non-marital status when to do so would be of benefit," citing *Baynes v. Baynes*, 219 Ga. App. 848 (467 SE2d 195) (1996). This charge is also not adjusted to the evidence, none of which showed that the Siegs held themselves out to be married only when it was of benefit to them.

Finally, the trial court charged the jury that the defendants had the burden of proving the existence of the common-law marriage; that the jurors had to decide whether the Siegs held themselves out to the world as being married; that common-law marriages required a capacity to contract, an actual agreement, and consummation; and that the fact that a ceremonial marriage occurs does not necessarily

mean that a common-law marriage did not already exist. These charges sufficiently covered the principles of common-law marriage, and we find no error in the trial court's refusal to give appellants' requests to charge.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur in the judgment only.*

DECIDED NOVEMBER 18, 1999 —
RECONSIDERATION DENIED DECEMBER 2, 1999 — 

*Ronald C. Berry*, for appellants.
*Oliver, Maner & Gray, Patrick T. O'Connor, Timothy D. Roberts*, for appellees.