## A05A1258. ELDRED v. BLUE CROSS & BLUE SHIELD OF GEORGIA, INC. et al.

(619 SE2d 331)

BLACKBURN, Presiding Judge.

In this negligence action, Tina Plants Eldred appeals the trial court's grant of summary judgment to Blue Cross & Blue Shield of Georgia, Inc. and Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. (collectively "Blue Cross"), contending that the trial court erred by finding Blue Cross's failure to timely approve an MRI was not a proximate cause of a stroke later suffered by Eldred. For the reasons set forth below, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewed in this light, the record shows that, in 2000, Eldred began experiencing bouts of severe dizziness coupled with visual disturbances. After undergoing these spells for over a year, Eldred visited Dr. David Boaz, her primary care physician, on July 9, 2001, and Dr. Boaz referred Eldred to Dr. James M. Kiely, a neurologist.

Dr. Kiely examined Eldred on October 26, 2001, and he determined that Eldred needed an MRI on a nonemergency basis. During Eldred's appointment, Dr. Kiely instructed her to call him if her symptoms got worse and scheduled a follow-up appointment for January 14, 2002.

Several days later, on October 30, 2001, Dr. Kiely's staff faxed a precertification request for Eldred's MRI to Blue Cross. After several subsequent requests, Blue Cross finally authorized the MRI on December 7, 2001, although it had an internal policy of ruling on such requests within three days of their receipt. Two separate employees of Blue Cross then electronically faxed the authorization to Dr. Kiely.

Despite the fact that she had a scheduled follow-up, Eldred did not show up for her appointment with Dr. Kiely on January 14, 2002, and she did not contact his office to inquire about the MRI. In the meantime, Eldred continued to suffer from dizziness, visual disturbances, and strong headaches. Then, on March 21, 2002, Eldred

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

returned to Dr. Boaz, her primary care physician, and complained that her symptoms continued. Dr. Boaz immediately ordered an MRI for Eldred without seeking precertification, and Eldred underwent the procedure on the following day.

After reviewing the MRI, Dr. Boaz informed Eldred that it showed lesions on the frontal lobe of her brain. Dr. Boaz instructed Eldred to return to Dr. Kiely, and Eldred set up an appointment for May 30, 2002. Eldred, however, voluntarily chose to cancel this appointment, despite the fact that she had been warned about the seriousness of her condition. Instead, Eldred rescheduled her appointment for July 2002 because the May appointment conflicted with a vacation to Washington, D.C.

Eldred suffered a stroke on June 29, 2002. Thereafter, Eldred filed suit against Dr. Boaz, Dr. Kiely, and Blue Cross. Eldred, however, subsequently dismissed her claims against both doctors, contending only that Blue Cross contributed to her injuries by failing to timely process Dr. Kiely's initial requests beginning in October 2001 to precertify Eldred for an MRI. On December 7, 2004, the trial court granted summary judgment to Blue Cross, and Eldred appeals.

> [S]ummary judgment is appropriate in negligence cases when, viewing all the facts and reasonable inferences from those facts in a light most favorable to the plaintiff, the evidence does not create a triable issue on the question of proximate cause. Although the question of proximate cause is ordinarily for the jury to decide, plain and indisputable cases may be decided by the court as a matter of law. In such plain cases, the inquiry is whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery.

(Citation and punctuation omitted.) *Brown v. All-Tech Investment Group*.[2]

Furthermore,

> [t]o state a claim against [Blue Cross, Eldred was] required to show that [Blue Cross's] negligence was the *legal* cause of her [stroke], i.e., that [Blue Cross's] negligence was the cause to which the law attributes her injury. She must show a legally attributable causal connection between [Blue Cross's] conduct and the alleged injury. The inquiry is not whether [Blue Cross's] conduct constituted a cause in fact of the

---

[2] *Brown v. All-Tech Investment Group*, 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2004).

injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery. . . . A cause which is merely incidental is not the proximate and responsible one. Where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of a third person, the defendant cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury.

(Punctuation omitted.) *Bonard v. Lowe's Home Centers.*[3]

In this case, the injury in question was caused by several intervening efficient acts of Eldred regarding her health care. First, the mere fact that there may have been some delay in Blue Cross's processing of the initial October 2001 MRI request did not prevent Eldred from undergoing an MRI. She clearly could have chosen to pay for one herself, as she eventually chose to do when an MRI was ordered by Dr. Boaz on March 21, 2002. Second, Eldred never called Dr. Kiely or Blue Cross to determine whether her MRI precertification request had been granted. And, third, despite knowledge of both her increasingly severe symptoms and an MRI showing that she had lesions on the frontal lobe of her brain, Eldred repeatedly failed to keep and make timely appointments to prevent further deterioration of her health. On this point, Eldred's own expert testified that, had Eldred kept her scheduled medical appointments with Dr. Kiely, the outcome of her case would have been different.

Under these circumstances, it is both clear and palpable that Eldred's independent decisions were the cause of the worsening of her condition and her ultimate stroke, rather than any delay by Blue Cross in processing her precertification request for an MRI, as its actions were not the proximate cause of Eldred's injury.

Accordingly, the trial court did not err in granting summary judgment to Blue Cross in this case.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED JULY 28, 2005.

*Gardner, Willis, Sweat & Goldsmith, Mark L. Pickett*, for appellant.

*Morris, Manning & Martin, Elizabeth C. Helm*, for appellees.

---

[3] *Bonard v. Lowe's Home Centers*, 224 Ga. App. 85, 87 (2) (479 SE2d 784) (1996).