06-5246-cv
Holmes v. Grubman

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: April 7, 2008)                              Decided: June 3, 2009)

Docket No. 06-5246-cv

WILLIAM K. HOLMES, HOLMES CAPITAL, LLC,
BREW DOG, LLC, BIMINI STAR, LLC, and
EBH INVESTMENTS CO., LLC,

   *Plaintiffs-Appellants*,

   v.

JACK GRUBMAN and CITIGROUP GLOBAL
MARKETS, INC. f/k/a SMITH BARNEY CO., INC.,

   *Defendants-Appellees*.

Before:  CABRANES and WALKER, *Circuit Judges.**

Plaintiffs-appellants, William K. Holmes and entities under his control, filed this appeal from

an order of the United States District Court for the Southern District of New York (Denise Cote,

*Judge*), dismissing with prejudice their claims, brought under Georgia law, against defendants-

appellants Salomon Smith Barney & Co, Inc. ("SSB"), a brokerage firm, and Jack Grubman, an SSB

financial analyst.  Among other things, plaintiffs alleged that defendants made fraudulent

---

   * Judge Reena Raggi recused herself from participating in oral argument and deciding this appeal.  Pursuant to § 0.14 of this Court's local rules, the appeal has been heard and decided by the remaining two judges on the panel, who constitute a quorum.  *See* 2d Cir. Local R. 0.14(b) ("If a judge of a panel of the court shall cease to continue with the consideration of any matter . . . the two remaining judges will determine the matter if they reach agreement and neither requests the designation of a third judge."), *available at* 28 U.S.C. Rules Pamphlet, Pt. I, at 342 (2008).

misrepresentations designed to cause plaintiffs to hold certain securities rather than sell them. On appeal, plaintiffs argue that the District Court erred in (1) denying leave to amend their complaint, (2) finding that they failed to state a claim for relief under Georgia's "blue sky" law, which prohibits various fraudulent and deceitful practices in the distribution, sale, and purchase of securities, and holding that (3) Georgia courts would not recognize a claim for fraud based on defendants' alleged misrepresentations that caused plaintiffs to forbear the sale of publicly traded securities, (4) plaintiffs failed to plead adequately proximate cause under Georgia law, and (5) SSB did not owe plaintiffs a fiduciary duty under Georgia law. Finding that the District Court correctly denied plaintiffs leave to amend their complaint and that plaintiffs failed to state a claim under Georgia's blue sky law, we affirm in part. Because the state's highest court has not addressed the remaining issues, and because we are unable to predict with confidence that court's positions on these issues, we certify three questions to the Supreme Court of Georgia.

Affirmed in part, insofar as the judgment of the District Court (1) denied plaintiffs leave to amend their complaint and (2) held that plaintiffs failed to state a claim under Georgia's blue sky law. Questions certified.

> ROSEMARY S. ARMSTRONG (Joseph J. Burton, *on the brief*), Burton & Armstrong, LLP, Atlanta, GA, *for Plaintiffs-Appellants William K. Holmes, Holmes Capital, LLC, Brew Dog, LLC, Bimini Star, LLC, and EBH Investments Co., LLC.*

> WALTER RIEMAN (Brad S. Karp, Eric S. Goldstein, Susanna Buergel, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, *for Defendants-Appellees Jack Grubman* and *Citigroup Global Markets, Inc. f/k/a Smith Barney Co., Inc.*

JOSÉ A. CABRANES, *Circuit Judge*:

This case, which was filed in U.S. District Court for the Middle District of Georgia but

consolidated with the WorldCom Securities Litigation in the U.S. District Court for the Southern District of New York (Denise Cote, *Judge*), presents several issues, four of which encompass questions of Georgia law. Plaintiffs-appellants, William K. Holmes and four entities under his control (collectively, "Holmes" or "plaintiffs"), once held a substantial number of shares in WorldCom, the now-defunct telecommunications giant, and allegedly refrained from selling those shares on the advice of their brokerage firm, defendants-appellees Citigroup Global Markets, Inc. ("CitiGroup"), then Salomon Smith Barney & Co., Inc. ("SSB"), and Jack Grubman, an SSB financial analyst.[1] Holmes's decision, allegedly induced by defendants fraudulent misrepresentations, resulted in the financial demise of Holmes and the entities.

We consider whether the District Court erred in (1) denying plaintiffs' untimely motion to amend their complaint or (2) dismissing plaintiffs' claim under Georgia's "blue sky" law[2] on the grounds that plaintiffs failed to state a claim under the relevant statute. Further, resolution of this appeal requires us to consider whether: (3) Georgia courts would recognize plaintiffs' claims of fraud based on defendants' alleged intent to cause plaintiffs to refrain from selling securities, (4) plaintiffs

---

[1] Although, due to Citigroup's acquisition of SSB, SSB is not a party to this appeal, plaintiffs attribute the alleged wrongdoing solely to SSB and Grubman. We therefore refer to SSB, and not Citigroup, throughout the opinion.

[2] "Blue sky" laws refer to state laws regulating the exchange of securities. Most blue sky laws "were enacted long before the Securities Act of 1933." *Black's Law Dictionary* 183 (8th ed. 2004) (quoting Louis Loss & Edward M. Cowett, *Blue Sky Law* 3 (1958)). Professor Lawrence M. Friedman has observed that the Kansas blue sky law, which passed in 1911 and was the nation's first, protected interests other than the "unsuspecting investor." Lawrence M. Friedman, *American Law in the 20th Century* 163 (2002) (noting, in addition, that "by the early 1930s, every state except Nevada had its own blue sky law"). "The blue sky laws were popular with bankers, especially small bankers; investment bankers were mostly on the other side. There was a certain element of local protectionism: when Kansas people invested their money in stock schemes, the money almost always left Kansas for distant parts." *Id.* There are several explanations for the origin of the term. One is that, in 1911, Wall Street's burgeoning securities trade raised for the Kansas legislature the specter of eastern industrialists descending upon the state in an attempt to sell everything, including the blue sky, to unsuspecting Kansans. *Black's Law Dictionary* 184 (citing 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 8.1, at 490-92 (3d ed. 1995)).

3

have adequately pleaded proximate cause under Georgia law, and (5) SSB owed plaintiffs a fiduciary duty under Georgia law. We affirm the judgment of the District Court with respect to the first two of these five issues. Because the state's highest court has not directly addressed the remaining issues and because we are unable to predict with certainty how the court would rule on them in the instant case, we certify the final three questions to the Supreme Court of Georgia.

**BACKGROUND**

Where, as here, we consider a District Court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), we "accept[ ] all factual allegations in the complaint as true." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (internal quotation marks omitted).

In 1998, plaintiffs owned approximately 2.1 million shares of WorldCom stock. Holmes alleges that on June 25, 1999, he ordered his SSB broker to sell all of his WorldCom stock. At that time, WorldCom stock was trading at approximately $92.00 per share. According to Holmes, the broker advised him not to sell the stock and observed that recent research reports by Jack Grubman had taken a favorable view of WorldCom. Holmes believed that the advice given by Grubman in his reports was reliable because, as Holmes put it, Grubman's reputation for excellence in analysis of telecommunications securities imbued him with "quasi-celebrity status" as a "swashbuckling deal broker" who "knew 'everyone who was anyone' in the telecom sector . . . including [WorldCom CEO Bernard] Ebbers." Joint Appendix ("J.A.") at 1848 (3d. Am. Comp. ¶ 153).

Based on the broker's advice and Grubman's reports, Holmes not only refrained from selling the WorldCom stock, but also purchased additional shares as the price per share declined. In October 2000, Holmes was forced to sell his WorldCom stock so that his SSB account would satisfy SSB's minimum balance requirement. According to Holmes, these "margin call" sales resulted in losses of nearly $200 million. The Holmes entities then filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Middle District of Georgia.

4

In June 2003, plaintiffs brought the instant action seeking compensatory and punitive damages under Georgia law in the same Bankruptcy Court as an adversary proceeding related to the Chapter 11 bankruptcy proceeding. Shortly thereafter, plaintiffs filed an amended complaint alleging, among other things, that SSB and Grubman made negligent and fraudulent misrepresentations designed to induce them to purchase and to refrain from selling WorldCom securities. The gravamen of this compliant was that defendants operated under a conflict of interest, commencing in April 1998, when SSB began to provide underwriting services to WorldCom at the same time that Grubman made purportedly objective investment recommendations in his reports to investors such as Holmes. Holmes alleged that SSB knew that WorldCom stock was grossly overvalued but nevertheless promoted it to him and other account holders in order to secure WorldCom's investment banking business.

The case was transferred to the U.S. District Court for the Southern District of New York and consolidated, for pre-trial purposes, in the multi-district WorldCom Securities Litigation. *See Holmes v. Grubman (In re WorldCom, Inc. Sec. Litig.)*, No. 02 Civ. 3288, 2006 WL 751382, at *1 (S.D.N.Y. Mar. 24, 2006) ("*Holmes I*" or "March 2006 Opinion"). After the transfer, Holmes filed a second amended complaint and defendants moved to dismiss. On March 24, 2006, the District Court granted defendants' motion on the grounds that (1) under Georgia tort law, plaintiffs cannot recover damages arising from their decision to hold securities instead of selling them, *id.* at *2; (2) plaintiffs failed to identify the statutory provision giving rise to their securities claim under Georgia's securities laws, *id.* at *3; and (3) plaintiffs failed to plead adequately their breach of contract claim, *id.* The District Court, *sua sponte*, permitted plaintiffs to file a third amended complaint, with the following instructions:

> To the extent [plaintiffs] wish to pursue a claim under Georgia's [blue sky law], they must identify the specific provision they seek to enforce. To the extent they believe they can file a breach of contract claim that is consistent with the factual assertions

in their pleading, they must identify the provision of the contract that was breached. *They should address to the extent that they were able to do so the other deficiencies in the Complaint to which the defendants refer in their motion papers since they will be given no further opportunity to amend their pleading to cure those deficiencies.*

*Id.* at *3 (emphasis added).

Plaintiffs filed a third amended complaint, alleging that defendants recommended that investors purchase WorldCom stock solely as a means to retain WorldCom's investment banking business and despite defendants' knowledge of WorldCom's weak prospects. *See Holmes v. Grubman (In re WorldCom, Inc. Sec. Litig.)*, 456 F. Supp. 2d 508, 511 (S.D.N.Y. 2006) ("*Holmes II*"). The third amended complaint contained the following seven causes of action: (1) fraudulent misrepresentation and omission of WorldCom's financial condition and the defendants' conflict of interest; (2) breach of fiduciary duty; (3) negligent misrepresentation for misleading information and omissions; (4) negligence in making disclosures; (5) violation of Georgia's blue sky laws, as codified at section 10-5-12 of the Annotated Georgia Code; (6) breach of contract; and (7) a "holder" claim—*i.e.*, one based on Holmes's decision, allegedly induced by SSB, to forbear the sale of WorldCom securities—solely to preserve the issue for appeal. *Id.* at 511-12 & n.3. For the first time, plaintiffs alleged that defendants made fraudulent misrepresentations that induced plaintiffs to purchase WorldCom securities prior to June 25, 1999. *Id.* at 511.

Defendants moved to dismiss the third amended complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Granting defendants' motion, the District Court held that (1) the third amended complaint's inclusion of claims arising from pre-June 25, 1999 purchases of WorldCom securities were new claims, untimely raised in the third amended complaint and unauthorized by the March 2006 Opinion, *Holmes II*, 456 F. Supp. 2d at 513; (2) plaintiffs failed to plead proximate cause with respect to the fraud, negligence, and negligent misrepresentation claims because they did not provide "fair notice of any disclosure that could be said to have played a

6

role in the decline in WorldCom's stock price and that was concealed by the defendants' fraud or negligence," *id.* at 515;[3] (3) the defendants did not owe plaintiffs a fiduciary duty under Georgia law, *id.* at 517-18; (4) the complaint's invocation of Georgia's blue sky law, "Title 10, Chapter 5, Section 12 of the Official Code of Georgia"—which contains twenty-three different prohibitions—did not satisfy the March 2006 Opinion's requirement that plaintiffs plead a violation of a *specific* provision of the statute, *id.* at 518; and (5) plaintiffs would not be given yet another opportunity to re-plead the claim, *id.* Also, the District Court dismissed again plaintiffs' (6) breach of contract claim and (7) "holder" claim. *Id.* at 519.

This appeal followed.

**DISCUSSION**

Before this Court, plaintiffs contend that the District Court erred in (1) denying them leave to amend their complaint to include claims based on their purchases of WorldCom securities prior to June 25, 1999, and (2) in dismissing plaintiffs' blue sky law claims for failure to identify with requisite specificity SSB's alleged violation of Ga. Code Ann. § 10-5-12. According to plaintiffs, the District Court erred in dismissing their remaining claims after predicting that Georgia courts would hold that, under Georgia law, (3) plaintiffs could not be granted relief based on their "holder claims" (4) plaintiffs failed to plead proximate cause, and (5) SSB did not owe plaintiffs a fiduciary duty.[4]

**A.      Leave To Amend**

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[a] court should freely

---

[3] Plaintiffs' WorldCom losses came about in October 2000, prior to the revelation in 2002 of the company's massive accounting fraud and subsequent bankruptcy. *See Holmes II*, 456 F. Supp. 2d at 515 n.7.

[4] Plaintiffs do not appeal the District Court's dismissal of their claim for breach of contract, and, accordingly, we consider it abandoned. *See, e.g.*, *Losacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

give leave [to amend] when justice so requires." We review a District Court's denial of leave to amend for abuse of discretion. *See, e.g., McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 -01(2d Cir. 2007); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal citations, alterations, and quotation marks omitted)). Generally, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200. Where, as here, a scheduling order governs amendments to the complaint, *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."), "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003) (quoting older versions of Federal Rules of Civil Procedure 15(a), 16(b)). Whether good cause exists turns on the "diligence of the moving party." *Id.*

It is undisputed that plaintiffs' motion to "enlarge" their complaint to include pre-1999 purchases was untimely under the District Court's scheduling order. In rejecting Holmes's untimely motion, the District Court concluded that plaintiffs had not been diligent in setting forth claims arising from their pre-1999 purchases of WorldCom and had not shown good cause for their failure to include those claims in earlier versions of the complaint. Specifically, the District Court recounted:

> Holmes had never referred to any claims based on [pre-June 25, 1999] purchases in his prior pleadings and motion practice, and as a result, leave to amend was confined to claims based on purchases of WorldCom stock after June 25, 1999. Indeed, in his prior pleadings Holmes'[s] claims hinged on his asserted reliance on a June 25, 1999 telephone conversation. Based on that call, Holmes alleged that he decided to not sell the 2.1 million shares of

8

WorldCom stock that he owned, deciding to hold that stock and acquire an unidentified amount of additional shares after June 25. Based on that cryptic reference to purchases made in reliance on the defendants' representations, Holmes was granted a limited leave to amend his complaint for a fourth time.

*Holmes II*, 456 F. Supp. 2d at 512-513; *see also id.* at 513 n.4 (explaining that "defendants contend that this is in fact [plaintiffs'] fifth amendment").

We agree with the District Court's assessment of plaintiffs' actions. The record is devoid of evidence supporting plaintiffs' contention that good cause existed for the District Court to modify its scheduling order. Accordingly, we affirm the District Court's denial of Holmes's motion to amend.

**B.      Georgia's Blue Sky Law**

We review *de novo* the District Court's dismissal of plaintiffs' claims for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Burch*, 551 F.3d at 124. We construe plaintiffs' complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Id.*

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must include "a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted) (alterations in original). Plaintiffs' second amended complaint asserted that "[i]n recommending the purchase of WorldCom stock . . . [defendants] violated Title 10 Chapter 5 of the Official Code of Georgia," J.A. at 1631 (2d Am. Compl. ¶ 120), and further alleged that SSB "knowingly made false and misleading statements in proceedings governed by Chapter 5 of the Official Code of Georgia," J.A. at 1631 (2d Am. Compl. ¶ 121). As the District Court noted, that section of the Georgia Code contains twenty-three different prohibitions, many of which proscribe false or misleading statements. *Holmes II*, 456 F. Supp. 2d at 518; *see also* Ga. Code Ann. §

9

10-5-12 (2008). In dismissing Holmes's second amended complaint, the District Court had stated, "To the extent [plaintiffs] wish to pursue a claim under [Ga. Code Ann. § 10-5-12], [they] must identify the specific provision [they] seek to enforce." *Holmes I*, 2006 WL 751382, at *3.

Notwithstanding the District Court's instructions, Holmes's third amended complaint neither cited a specific provision of the statute, nor referred to particular false or misleading statements that allegedly violated the statute. The complaint stated simply that "[SSB], as a securities dealer, knowingly made false and misleading statements in proceedings governed by Title 10 Chapter 5 Section 12 of the Official Code of Georgia," J.A. 1872 (3d Am. Compl. ¶ 124). We agree with the District Court that plaintiffs' complaint effectively "obstructed any analysis of whether [plaintiffs'] pleading stat[ed] a claim," under Georgia's securities statute, insofar as the complaint tracks several of the statute's provisions. *Holmes II*, 456 F. Supp. 2d at 518. Because plaintiffs failed to provide SSB with fair notice of their claim and the grounds upon which it rested, the District Court's dismissal of this claim was entirely appropriate.

**C.    Remaining Claims**

The District Court dismissed Holmes's remaining claims, which sounded in Georgia law, after concluding that plaintiffs had not stated grounds for relief. As we explain below, the Supreme Court of Georgia has not addressed the questions necessary for resolving these issues.

**1.    Holder Claims**

The Supreme Court of Georgia has defined one of the elements of the "tort of fraud" as an "intention to induce the plaintiff to act *or refrain from acting*." *Stiefel v. Schick*, 398 S.E.2d 194, 195 (Ga. 1990) (emphasis added) (quotation marks omitted). While that court has not applied this rule in the context of fraud claims arising from the holding of publicly traded securities, it has not foreclosed that possibility. The Georgia Court of Appeals, Georgia's intermediate appellate court, has on two occasions touched on the subject. In *Mack v. Smith*, the Georgia Court of Appeals dismissed a fraud

10

claim, in part, because the plaintiffs did not "purchase . . . the securities or investment contracts." 344 S.E.2d 474, 475 (Ga. Ct. App. 1986). More recently, however, the same court affirmed a judgment for plaintiffs who claimed to have been "fraudulently induced into making *and keeping* their investments." *Argentum Int'l, LLC v. Woods*, 634 S.E. 2d 195, 201 (Ga. Ct. App. 2006) (emphasis added).

The District Court acknowledged in a related case that "Georgia courts have not addressed the issue," but nevertheless rejected the "holder claims," citing "the inherent difficulty of proving reliance and damages in such actions, as well as the potential for non-meritorious suits brought merely to extract a settlement," and the possibility that "holder claims would throw open to the trier of fact many rather hazy issues of historical fact the proof of which depended almost entirely on oral testimony about largely conjectural and speculative damages." *Weinstein v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 336 F. Supp. 2d 310, 319 (S.D.N.Y. 2004) (internal quotation marks omitted). The District Court also noted that individuals who have not actually purchased securities are not entitled to sue under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq. See In re WorldCom, Inc. Sec. Litig.*, 336 F. Supp. 2d at 319 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975)).

Plaintiffs argue that "holder claims" would be recognized under Georgia law because forbearance, an induced failure to act, has long been recognized as a valid basis for claims sounding in fraud. *See, e.g.*, Restatement (Second) of Torts § 525 (1977) ("One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or *to refrain from action in reliance upon it*, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." (emphasis added)). *Cf. Gullock v. Spectrum Scis. & Software, Inc.*, 146 F. Supp. 2d 1364, 1375 n.10 (M.D. Ga. 2001) ("The Supreme Court of Georgia has routinely cited to [the] Restatement of Torts for positive authority . . . .")

11

(collecting cases). Plaintiffs further note that several states—including California, New York, and New Jersey—recognize fraud claims based on forbearance in the sale of publicly traded securities. Among other cases, plaintiffs rely on *Small v. Fritz Companies, Inc.*, in which the Supreme Court of California first recognized "holder claims," based in part on its observation that the risk of nonmeritorious suits "[could] not justify a blanket rule of nonliability" for those who knowingly used false or misleading information to induce individuals to hold securities. 65 P.3d 1255, 1264 (Cal. 2003); *see also Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 264 (D.N.J. 1990) (upholding a "holder claim," noting that "[l]ies which deceive and injure do not become innocent merely because the deceived continue to do something rather than begin to do something else") (New York and New Jersey law).

SSB counters that the Supreme Court of Georgia would bar "holder claims" on policy grounds similar to those cited by the District Court. According to SSB, "holder claims" involve (1) incoherent theories of proximate cause and damages, (2) speculative damages, and (3) unprovable claims of a subjective intent to sell. SSB further observes that at least seven other states—Connecticut, Delaware, Illinois, Minnesota, Pennsylvania, Mississippi, and Texas—do not recognize "holder claims." *See* Appellee's Br. at 11 (citing, in alphabetical order by state, *Chanoff v. U.S. Surgical Corp.*, 857 F. Supp. 1011, 1018 (D. Conn. 1994) (Connecticut law); *Manzo v. Rite Aid Corp.*, No. Civ. A 18451-NC, 2002 WL 31926606, at *5 (Del. Ch. Dec. 19, 2002) (Delaware law); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692 (7th Cir. 1990) (Illinois law); *Arent v. Distrib. Scis., Inc.*, 975 F.2d 1370, 1374 (8th Cir. 1992) (Minnesota law); *Crocker v. FDIC*, 826 F.2d 347, 350-51 (5th Cir. 1987) (Mississippi law); *WM High Yield Fund v. O'Hanlon*, No. Civ. A. 04-3423, 2005 WL 1017811, at *13 (E.D. Pa. Apr. 29, 2005) (Pennsylvania law); *In re Enron Corp. Sec. Derivative &*

12

*"ERISA" Litig.*, No. MDL-1446, 2007 WL 789141, at *13 (S.D. Tex. Mar. 12, 2007) (Texas law)).[5]

### 2. Proximate Cause

Plaintiffs' theory is that defendants knew of the impending collapse of WorldCom stock value but nevertheless gave Holmes inaccurate advice that plaintiffs relied upon in deciding not to sell their WorldCom securities on June 25, 1999. Under Georgia law, whether the conduct of a "tortfeasor is the proximate cause of a subsequent injury is determined by asking whether the subsequent injury was a reasonably foreseeable consequence of the original tortious act." *De Kalb County Hosp. Auth. v. Davis*, 295 S.E.2d 840, 841 (Ga. 1982); *see also* Restatement (Second) of Torts § 548A ("A fraudulent misrepresentation is a legal cause [*i.e.*, proximate cause] of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance."). While plaintiffs concede, as they must, that the Supreme Court of Georgia has not applied this rule in the context of securities litigation, they aver that their theory is cognizable as an element of fraud under existing Georgia common law.

The District Court held that, for "tort claims based on misrepresentations or omissions concerning securities," proximate cause can be satisfied only if plaintiffs plead "that the truth concealed by the defendant entered the market place" and thereby caused the stock price to drop. *Holmes II*, 456 F. Supp. 2d at 514. The District Court drew its conclusion from its brief analysis of *Dura Pharmaceuticals, Inc. v. Brudo*, which was a "fraud-on-the-market" case involving federal securities statutes," 544 U.S. 336, 342 (2005), and from a consideration of secondary sources, *see Holmes II*, 456 F. Supp. 2d at 515 (discussing Restatement (Second) of Torts § 548A cmt. a & b. and Prosser & Keeton, The Law of Torts, § 110 (W. Page Keeton ed., 5th ed. 1984)). The District Court

---

[5] Defendants' brief also cites *Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 928-29 (4th Cir. 1984), for the proposition that Virginia does not recognize "holder claims." Appellee's Br. at 12 n.1. However, Sit-Set addresses only the "wantoness[] or malice" required to support a punitive damages award. *See Sit-Set*, 747 F.2d at 928-29.

concluded that "[t]here is no reason to believe that the Georgia common law embodies any different standard" than the sources analyzed by the District Court. *Id.*

### 3. Fiduciary Duty

The Georgia statute governing the existence of fiduciary duties provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, *from a similar relationship of mutual confidence*, the law requires the utmost good faith, such as the relationship between partners, *principal and agent*, etc.

Ga. Code Ann. § 23-2-58 (2008) (emphases added).

Here, plaintiffs' accounts with SSB were self-directed, or "non-discretionary," meaning that neither SSB nor its brokers had discretion to invest plaintiffs' assets absent plaintiffs' direction. Interpreting the "controlling influence" requirement of Georgia's fiduciary duty statute, the District Court held that "[i]n Georgia, a broker only becomes a 'full-fledged fiduciary' of his client where the client has entrusted the broker with control over a discretionary trading account." *Holmes II*, 456 F. Supp 2d at 517 (quoting *Prudential Bache Sec., Inc. v. Pitman* ("*Pitman*"), No. 1:89-CV-85, 1991 WL 160039, at *4 (N.D. Ga. Apr. 4, 1991) ("In a non-discretionary account, the broker acts only upon the customer's instructions and the customer determines all purchases and sales. In a discretionary account, the broker has the authority to make trades on the broker's own initiative for the best interests of the customer. It is only with a discretionary account that the broker becomes a full-fledged fiduciary of the customer.")).

Plaintiffs argue that, under Georgia law, brokerage firms owe holders of nondiscretionary accounts a fiduciary duty arising from a principal-agent relationship. More specifically, plaintiffs contend that SSB owed them, at the very least, "a fiduciary duty of good faith, which includes the duty not to misrepresent material facts." Appellants' Br. at 55. According to plaintiffs, decisions by

14

Georgia's intermediate appellate court belie the District Court's view. Among other cases, plaintiffs cite *Glisson v. Freeman*, in which the Georgia Court of Appeals observed that

> [a] stockbroker's duty to account to its customer is fiduciary in nature, so that the broker is obligated to exercise the utmost good faith. Requirements of good faith demand that in the principal's interest it is the agent's duty to make known to the principal all material facts which concern the transactions and subject matter of his agency.

532 S.E.2d 442, 449 (Ga. Ct. App. 2000) (citations omitted) (alteration in original). The Georgia Court of Appeals further noted that "[w]ith respect to a nondiscretionary account, . . . the broker owes a number of duties to the client, including . . . the duty not to misrepresent any fact material to the transaction," but did not explicitly indicate whether the broker of a nondiscretionary account owes his client a fiduciary duty. *Id*; *cf.* Restatement (Third) of Agency § 8.01 cmt. b (2006) ("An agent's failure to provide material information to the principal may facilitate the agent's breach of the agent's duties of loyalty to the principal.")

We note that the Supreme Court of Georgia has never held that a brokerage firm owes—or does not owe—a fiduciary duty to the holder of a nondiscretionary account. Nor has the Supreme Court of Georgia indicated its position on the related question of whether a brokerage firm and the holder of a nondiscretionary account are agent and principal, such that their relationship might give rise to fiduciary duties under Ga. Code Ann. § 23-2-58.

**D.      Certification**

Georgia law permits the Georgia Supreme Court to accept from any circuit court of appeals of the United States "questions of the laws of [Georgia] which are determinative of [a] case . . . [if] there are no controlling precedents in decisions of the Supreme Court [of Georgia]." Ga. Code Ann., § 15-2-9 (2008). *See also* Ga. Const. Art. VI, § VI, Para. IV ("The Supreme Court shall have jurisdiction to answer any question of law from any state appellate or federal district or appellate court. . . ."); Ga. S. Ct. R. 46 ("When it shall appear to the Supreme Court of the United States, or to

15

any Circuit Court of Appeals of the United States, or to any state appellate court, that there are involved in any proceeding before it questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State, such court may certify such questions or propositions of the laws of Georgia to this Court for instructions.").

Although Georgia's certification criteria are met in this case, we do not certify a question of unsettled state law merely because state law permits it. Whether we ask a state court to resolve unsettled legal questions will depend on, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007); *see also Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 531 (2d Cir. 2006) (same); *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000) (same).[6]

We conclude that each of the three unresolved issues in this case is appropriate for certification to the Supreme Court of Georgia. First, with respect to each issue, we find no definitive guidance in Georgia law. As the District Court acknowledged, Georgia courts have not provided guidance as to whether, under Georgia common law, a plaintiff may bring "holder claims" for induced forbearance in the sale of securities. Similarly, the District Court correctly noted that Georgia courts have not decided whether a plaintiff may establish a *prima facie* case for securities fraud without alleging that the information allegedly withheld by defendants entered the marketplace

---

[6] We do not consider these factors necessarily to constitute the sum total of an analysis of certification to a state court. *See, e.g.*, *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 58 (2d Cir. 2007) (characterizing the same three factors noted in *O'Mara* as "three *principal* issues" (emphasis added)); *Tinelli v. Redl*, 199 F.3d 603, 606 n.5 (2d Cir. 1999) (noting that "[c]ertification . . . is not proper where the question does not present a complex issue, there is no split of authority and sufficient precedents exist for us to make [a] determination" (internal quotation marks omitted)). However, we note that in this case, these factors are both necessary and sufficient for our analysis.

16

and caused the value of securities to decrease.

Whether Georgia courts have considered whether a broker managing a non-discretionary account owes his client a fiduciary duty merits brief discussion. As noted, the District Court relied on a ruling from the Northern District of Georgia for the proposition that, under Georgia law, brokers managing non-discretionary accounts are not "full-fledged fiduciar[ies]." *Holmes II*, 456 F. Supp 2d at 517 (quoting *Pitman*, 1991 WL 160039, at *4). While we have suggested that, under certain circumstances, it may be appropriate to accord some measure of deference to a federal district court's interpretation of the laws of the state in which the court is located, *see Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 281 (2d Cir. 1981) ("It has frequently been observed that a court of appeals should give considerable weight to state law rulings made by district judges within the circuit, who possess familiarity with the law of the state in which their district is located."), deference is not appropriate in this case. The District Court's order in *Pitman* does not purport to rely on Georgia law for the observation at issue. Instead, *Pitman* cites an opinion from the Eastern District of Michigan that did not apply Georgia law. *See Pitman*, 1991 WL 160039 at *4 (citing *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp 951, 953 (E.D. Mich. 1978)). It appears that, aside from the District Court's decision in the instant case, no court has cited *Pitman* as an authoritative interpretation of Georgia law.

The two remaining factors also weigh in favor of certification. Each issue is of central importance to securities litigation under Georgia law, and resolution of each issue could affect in a significant way businesses and individual investors in the state. Finally, each issue is critical to the resolution of this litigation. If the Supreme Court of Georgia agrees with the District Court's characterization of Georgia law, then the cause will be resolved immediately in favor of defendants. If the Supreme Court of Georgia reaches different conclusions, then plaintiffs may be able to proceed with their claims against SSB in the Southern District of New York.

17

Accordingly, we certify the following questions to the Supreme Court of Georgia:

I.  Does Georgia common law recognize fraud claims based on forbearance in the sale of publicly traded securities?

II.  With respect to a tort claim based on misrepresentations or omissions concerning publicly traded securities, is proximate cause adequately pleaded under Georgia law when a plaintiff alleges that his injury was a reasonably foreseeable result of defendant's false or misleading statements but does not allege that the truth concealed by the defendant entered the market place, thereby precipitating a drop in the price of the security?

III.  Under Georgia law, does a brokerage firm owe a fiduciary duty to the holder of a non-discretionary account?

The Supreme Court of Georgia may reformulate or expand upon these questions as it sees fit, based on the record of this case.

**CONCLUSION**

For the reasons stated above, the October 13, 2006 order of the District Court is AFFIRMED insofar as it dismissed plaintiffs' claims arising from their purchases of WorldCom securities prior to June 25, 1999.

Three questions are CERTIFIED to the Georgia Supreme Court.

The Clerk of the Court shall transmit to the Supreme Court of Georgia a notice of certification, together with a copy of this opinion and a complete record of the case, including the set of briefs, appendices, and record filed by the parties in this Court. This panel will retain responsibility for the decision of this case until we have reviewed the response of the Supreme Court of Georgia to our certification.

The parties shall bear equally any costs or fees imposed by the Supreme Court of Georgia.