11-1270-cv
BIV-NY v. Smith Barney

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of  March, two thousand twelve.

Present:
        ROBERT A. KATZMANN,
        REENA RAGGI,
                *Circuit Judges*,
        JED S. RAKOFF,
                *District Judge*.[*]

───────────────────────────────────────────────

JOHN FINN, PARAGON RESERVE COMPANY, TEXAS PGI, INC., AMERICAN EAGLE OUTFITTERS, INC., AEO MANAGEMENT CO.,

        *Plaintiffs*,

BIV-NY, MICHAEL A. PASSIDOMO, Doctor, MICHAEL PUDER, Trustee of the MP Trust,

        *Plaintiffs-Appellants*,

                v.                                           No.  11-1270-cv

SMITH BARNEY, CITIGROUP GLOBAL MARKETS INC., CITIGROUP INC., CITI SMITH BARNEY, CITIGROUP GLOBAL CAPITAL MARKETS, INC.,

        *Defendants-Appellees*.

───────────────────────────────────────────────

────────────────

        [*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

For Plaintiffs-Appellants:                    ROBERT S. SCHACHTER (Jeffrey C. Zwerling, Hillary Sobel, Paul Kleidman, Justin M. Tarshis, *on the brief*), Zwerling, Schachter & Zwerling, LLP, New York, N.Y. (Michael E. Criden, Kevin Love, Criden & Love, P.A., South Miami, Fla., *on the brief*)

For Defendants-Appellees:                CHARLES E. DAVIDOW (Brad S. Karp, Susanna M. Buergel, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Swain, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiffs-Appellants ("plaintiffs") appeal from a final judgment entered on March 2, 2011 by the United States District Court for the Southern District of New York (Swain, *J.*), in favor of Defendants-Appellees ("defendants" or "Citigroup"), based on a March 1, 2011 Memorandum Opinion and Order dismissing the Fourth Consolidated Amended Complaint (the "complaint") with prejudice.  The complaint asserts (1) a market manipulation claim pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and (2) a claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Citigroup, Inc. for allegedly acting as a controlling person with respect to the underlying violation.  On appeal, plaintiffs contend that the district court (1) abused its discretion when it took judicial notice of certain documents concerning defendants' auction rate securities ("ARS") bidding practices and (2) erred in dismissing its complaint for failing to plead adequately manipulative conduct or reasonable reliance.  We assume the parties' familiarity with the facts and procedural history of this case.

We first turn to plaintiffs' contention that the district court improperly took judicial notice of various documents, including (i) the 2006 SEC Order disclosing the auction practices of certain ARS broker-dealers, including Citigroup; (ii) news articles respecting the 2006 SEC Order; (iii) ARS prospectuses that explained Citigroup's auction bidding practices and disclosed the risk of auction failures; (iv) a section of the Smith Barney website disclosing information respecting Citigroup's auction practices; and (v) confirmation documents provided to the two plaintiffs with Citigroup accounts directing them to the Smith Barney website. We review a district court's determination whether to take judicial notice of documents under an abuse-of-discretion standard. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008). The district court may take judicial notice of documents where the documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

Here, we cannot conclude that the district court abused its discretion in taking judicial notice of the above-listed documents. These documents were publicly available both prior to and during the class period, and, contrary to plaintiffs' assertion, the district court took judicial notice of the documents for the purpose of establishing that the information was publicly available; it did not consider the documents for their truth.[1] *See Staehr*, 547 F.3d at 425 ("[T]he

---

[1] We further observe that because plaintiffs' own complaint quotes certain disclosures from the Smith Barney website, they cannot seriously argue that the website disclosures are "outside of the pleadings," do not "form the basis of Plaintiffs' claims," or that "Plaintiffs neither incorporated nor relied upon the website in stating their claim." Pls.' Br. 16, 20.

3

District Court did not abuse its discretion in denying Appellants' motion to strike the materials submitted by Appellees for judicial notice purposes [because] [t]he materials . . . were offered to show that certain things were said in the press, and that assertions were made in lawsuits and regulatory filings . . . ."). Indeed, other courts in this Circuit have taken judicial notice of substantially similar documents (including the 2006 SEC Order, ARS prospectuses, website disclosures, and media reports) when considering motions to dismiss for alleged violations of the securities laws in connection with the sale of ARS. *See In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *7 & n.6, *10, *13 (S.D.N.Y. June 10, 2010); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 386 n.5, 396 n.11 (S.D.N.Y. 2010), *aff'd*, *Wilson v. Merrill Lynch & Co., Inc.*, --- F.3d ----, 2011 WL 5515958 (2d Cir. 2011). Accordingly, we conclude that the district court did not abuse its discretion in taking judicial notice of these documents.

We next turn to plaintiffs' argument that the district court erred in dismissing its market manipulation claim for failure to state a claim upon which relief can be granted. We review *de novo* a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Th[is] plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

4

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, in relevant part, states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

In the context of the securities laws, the term "manipulation" refers to "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) ("Manipulation is virtually a term of art when used in connection with securities markets. The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." (internal quotation marks and citations omitted)). "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the

5

mails or any facility of a national securities exchange." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007). "In order for market activity to be manipulative, that conduct must involve misrepresentation or nondisclosure." *Wilson*, 2011 WL 5515958, at *8. The "market is not misled when a transaction's terms are fully disclosed." *Id.* (internal quotation marks omitted). "In this regard, the prohibition of manipulative practices in Section 10(b) is fully consistent with the fundamental purpose of the Exchange Act to substitute a philosophy of full disclosure for the philosophy of caveat emptor." *Id.* (internal quotation marks and alternations omitted).

In this case, we conclude that defendants' disclosures preclude plaintiffs' claim that the defendants' conduct was manipulative. The core allegation in the complaint is that plaintiffs purchased Citigroup ARS believing that auction clearing rates were determined solely by investor supply and demand when, in fact, defendants were increasingly intervening in the ARS market without plaintiffs' knowledge. In light of defendants' disclosures that, *inter alia*, Citigroup could "in its sole discretion" "routinely place one or more bids in an auction for its own account . . . to prevent a failed auction," and "[b]ids by Citigroup . . . are likely to affect (i) the auction rate . . . and (ii) the allocation of ARS being auctioned," J.A. 252, plaintiffs cannot plausibly allege that Citigroup was intervening in the ARS market without their knowledge or that they reasonably believed that auction clearing rates were determined by "the natural interplay of supply and demand," *id.* at 208.[2] As we recently observed in *Wilson*, "there can be

_____

[2] Plaintiffs can hardly claim ignorance of defendants' disclosures given that their own complaint quotes some of the disclosures. *See* J.A. 220 ("Citigroup is permitted, but not obligated, to submit orders in auctions for its own account either as a bidder or a seller and *routinely* does so in the auction rate securities market *in its sole discretion*.") (emphasis added).

6

no dispute that the general phenomenon of ARS dealers placing bids to prevent failed auctions (*i.e.*, 'support bidding') was publicly disclosed by . . . July 2007" -- before the beginning of the class period in this case. *Wilson*, 2011 WL 5515958, at *9.

Plaintiffs argue that notwithstanding the disclosures defendants' conduct was misleading due to the increasing frequency with which Citigroup placed support bids. However, unlike in *Wilson*, the plaintiffs in this case do not allege that Citigroup placed support bids in *every* auction and, even assuming that there was such an allegation, "we do not see how that allegation can be actionable given [defendants'] disclosure that it 'may routinely' place [support] bids." *Id.* at *11. Accordingly, we affirm the district court's dismissal of plaintiffs' market manipulation claim for failing to allege manipulative conduct. Having concluded that the complaint fails to state a claim for any primary violation of the securities laws, we also affirm the district court's dismissal of plaintiffs' Section 20(a) claim alleging that Citigroup Inc. is liable as a controlling person. *See id.* at *16.

We have considered plaintiffs-appellants' remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7