RITCHIE RISK–LINKED STRATEGIES
TRADING (IRELAND), LTD., et al.,
Plaintiffs,

v.

COVENTRY FIRST LLC,
et al., Defendants.

No. 09 Civ. 1086 (VM)(DF).

United States District Court,
S.D. New York.

June 5, 2012.

James William Halter, James Ryan Hubbard, Jeffrey Lew Liddle, Liddle & Robinson, LLP, New York, NY, for Plaintiffs.

Kenneth Jerome Brown, Richmond T. Moore, Andrew T. Boone, Dane Hal Butswinkas, David A. Forkner, Katherine Lindsey O'Connor, Thomas Patrick Windom, Williams & Connolly LLP, Washington, DC, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. and Ritchie Risk–Linked Strategies Trading (Ireland) II, Ltd. (together, "Plaintiffs") brought this action alleging breach by defendants Coventry First LLC, the Coventry Group, Inc., Montgomery Capital, Inc. and LST I LLC (together, "Defendants") of a series of contracts under which Plaintiffs purchased secondary-market life insurance policies (the "Policies") from Defendants. Plaintiffs now ask the Court to vacate an order (the "Order") issued by Magistrate Judge Debra Freeman, to whom this matter had been referred for supervision of pretrial proceedings, that refused to permit Plaintiffs' untimely addition of certain expert witnesses to testify in relation to the value of the Policies at the time of their sale by Defendants. For the reasons described below, the Court DENIES Plaintiffs' request to vacate the Order.

## I. BACKGROUND

Expert discovery in this matter was to be conducted on the following schedule: Plaintiffs' expert reports were due on November 9, 2011; Defendants' reports on December 21, 2011; any amended reports by January 9, 2012; and the close of expert discovery, including all expert depositions, by February 24, 2012. (*See* Docket Nos. 93, 99.) On November 9, 2011, Plaintiffs timely served two expert reports on Defendants addressing Defendants' business practices and the effect of Defendants' alleged breach upon Plaintiffs' plan to securitize the Policies. Neither of these reports related to the contract price at which Plaintiffs purchased the Policies from Defendants. Moreover, Plaintiffs elected not to submit any expert report on damages, though they had previously informed both Magistrate Judge Freeman and Defendants that they had retained a damages expert and were preparing such a report.

On December 21, 2011, Defendants timely served Plaintiffs' counsel with six expert reports. Defendants marked the entirety of these expert reports as "Attorneys' Eyes Only," which, under the prevailing protective order, prohibited Plaintiffs' counsel from providing unredacted copies of the reports to their clients. Plaintiffs' counsel could, of course, discuss the import of these reports with their clients.

Among the expert reports served, one authored by Donald F. Behan and Geoff Chaplin (the "Behan & Chaplin Report") advanced the position that the market value of the Policies was far lower than the contract price Plaintiffs paid to Defendants because the contract price was based on improper and unrealistic mortality and actuarial assumptions. (*See* Decl. of James W. Halter, Esq. (Docket No. 108), Ex. C at 91.)

Upon receipt of Defendants' expert reports, Plaintiffs did not immediately request an alteration of the expert discovery schedule or an opportunity to submit rebuttal actuarial expert reports.[1] Rather, Plaintiffs' counsel complained to Defendants' counsel that the blanket designation of the expert reports as "Attorneys' Eyes Only" hindered their ability to meaningfully advise their clients. On January 30, 2012, Defendants began providing

---

1. In fact, on January 9, 2012—the deadline for amended expert reports—Plaintiffs requested an additional eight days to amend their reports and advised the Court that they did not foresee a need to alter any other expert discovery deadline. (*See* Docket No. 102 at 4.)

redacted expert reports to Plaintiffs' counsel. Of the two expert reports served in redacted form on that day, one—the report of economist Jonathan Walker (the "Walker Report")—referred to the position adopted in the Behan & Chaplin Report. It was only after receipt of the Walker Report, and at the beginning of a three-week period during which all expert depositions were to take place, that Plaintiffs' counsel wrote to Magistrate Judge Freeman requesting permission to submit rebuttal actuarial expert reports. (Docket No. 104.) In their request, Plaintiffs argued that the position set forth in the Behan & Chaplin Report was "dramatic" and "entirely new," and necessitated expert rebuttal. (*Id.*)

By way of a February 9, 2012 letter and invoking Groundhog Day as their theme, Defendants opposed Plaintiffs' request to present rebuttal experts. (*See* Docket No. 102.) In their letter, Defendants pointed to filings and actions taken by Plaintiffs in bankruptcy proceedings and other litigation related to the sale of the Policies, and averred that such history undercut Plaintiffs' assertion that they were surprised by the actuarial critique presented in the Behan & Chaplin Report. (*See id.* at 7–9.)

On February 17, 2012, by letter endorsement referencing the "reasons stated persuasively in Defendants' opposition letter of February 9, 2012," Magistrate Judge Freeman issued the Order denying Plaintiffs' request for leave to submit rebuttal actuarial expert reports. Plaintiffs filed timely objections and have asked the Court to vacate the Order. Defendants submitted a brief in response to Plaintiffs' objections, and Plaintiffs another in reply.

## II. STANDARD OF REVIEW

A district court evaluating a magistrate judge's order with respect to a matter not dispositive of a claim or defense may adopt the magistrate judge's findings and conclusions as long as the factual and legal bases supporting the ruling are not clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). "Under this highly def-

erential standard of review, magistrates are afforded broad discretion in resolving [nondispositive] disputes and reversal is appropriate only if their discretion is abused." *AMBAC Fin. Servs., L.L.C. v. Bay Area Toll Auth.,* No. 09 Civ. 7062, 2010 WL 4892678, at *2 (S.D.N.Y. Nov. 30, 2010) (citation omitted). "A magistrate judge's ruling is considered 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Moore v. Publicis Groupe,* No. 11 Civ. 1279, 2012 WL 1446534, at *1 (S.D.N.Y. Apr. 26, 2012) (citing *In re Comverse Tech., Inc. Sec. Litig.,* No. 06 Civ. 1825, 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007)). "The reviewing court must be left with the definite and firm conviction that a mistake has been committed to overturn the magistrate judge's resolution of a nondispositive matter." *AMBAC Fin. Servs.,* 2010 WL 4892678, at *2 (citation and internal quotation omitted). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir. 1990). A district judge, after considering any objections by the parties, may accept, set aside, or modify, in whole or in part, the findings and recommendations of the magistrate judge with regard to such matters. *See* Fed.R.Civ.P. 72(a); *DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994).

## III. DISCUSSION

Having conducted a review of the full factual record in this litigation, including the pleadings and the parties' respective papers submitted in connection with the underlying expert discovery request, as well as the Order and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the Order are not clearly erroneous or contrary to law. Accordingly, the Court denies Plaintiffs' request that it vacate the Order.

Magistrate Judge Freeman properly evaluated Plaintiffs' request under the standard set forth in Federal Rule of Civil Procedure 16(b)(4) ("Rule 16(b)(4)") because Plaintiffs sought to alter the applicable scheduling order by extending the deadline for expert discovery and creating an additional round of

such discovery. Rule 16(b)(4) states that scheduling orders "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).

 The Rule 16(b)(4) "good cause" inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment. *See Kassner v. 2nd Ave. Delicatessen*, 496 F.3d 229, 244 (2d Cir.2007) (*citing Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir.2000)). The burden of demonstrating good cause rests with the movant. *See Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir.2009) (citation omitted).[2]

 A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence. *Compare King v. Friend of Farmer, Inc.*, No. 97 Civ. 9264, 2000 WL 290355, at *1 (S.D.N.Y. Mar. 21, 2000) (refusing to reopen expert discovery to include rebuttal psychological expert testimony, that was indisputably relevant to issue of damages, because substitute counsel "offer[ed] no explanation as to why prior counsel did not retain that expert prior to the completion of discovery[ ]"), *with Jung v. Neschis*, No. 01 Civ. 6993, 2007 WL 5256966, at *4, *16–17 (S.D.N.Y. Oct. 23, 2007) (finding good cause to extend expert discovery deadline where party sought to introduce substitute expert because original expert developed Alzheimer's disease during course of litigation). Under the circumstances here, Plaintiffs cannot demonstrate that they acted with diligence sufficient to justify reopening expert discovery; as such, the Court will not disturb the Order.

Plaintiffs' central objection to the Order is that it was based on the purportedly mistaken premise that Plaintiffs have the burden of proving the market value of the Policies. The Order, according to Plaintiffs, is clearly erroneous because, as a matter of law, it is Defendants who bear the burden of showing that the actual purchase price is not indicative of the contract's market value. (*See* Plaintiffs' Objections to the Magistrate Judge's February 17, 2012 Order Denying Plaintiffs' Req. to Disclose Rebuttal Expert Test. (Docket No. 106) at 17 (*citing Schonfeld v. Hilliard*, 218 F.3d 164, 178–79 (2d Cir.2000)).) Plaintiffs argue that because Defendants bear the burden to challenge the contract price, Plaintiffs must be afforded an opportunity to rebut any expert testimony used by Defendants in their effort to carry that burden. Plaintiffs do not dispute that they ultimately bear the burden of establishing the quantum of damages arising from Defendants' alleged breaches of contractual warranties.

Plaintiffs' burden-shifting argument, however, misses the point. Even if it is Defendants' burden to refute a presumption that the contract price represents the market value of the Policies, Plaintiffs were nonetheless obliged to comply with the operative scheduling order in defending that presumption. The parties proposed a schedule for expert discovery that was "so ordered" by Magistrate Judge Freeman. That scheduling order did not provide for rebuttal experts or rebuttal expert reports. (*See* Docket No. 93.) In short, Plaintiffs agreed that Defendants would provide expert reports at a date later than their own, and agreed that there was no need to provide for rebuttal reports— or even the possibility of such reports.

Plaintiffs can justify a modification of that scheduling order only if they substantiate their claims of having had no reason to expect that Defendants would advance the position set forth in the Behan & Chaplin Report. Alternately put, Plaintiffs cannot succeed in demonstrating their diligence— and thus good cause for amending the scheduling order—if they knew or should

---

2. In addition to the movant's diligence, a court may consider the degree to which any non-movant would be prejudiced by a requested amendment. *Id.* The absence of prejudice to the non-movant in and of itself, however, is insufficient to satisfy the Rule 16(b)(4) standard. *Johnson v. Bryson*, 851 F.Supp.2d 688, 703, No. 10 Civ. 3105, 2012 WL 983563, at *9 (S.D.N.Y. Mar. 22, 2012) (*citing Estate of Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272, 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007)). Here, because Plaintiffs cannot establish that they acted with diligence, the Court need not consider the extent to which Defendants may or may not be prejudiced by an extension of the expert discovery schedule.

have known that Defendants might present expert testimony to argue that the contract price of the subject insurance policies did not represent market value for purposes of a damages calculation. *See Fidelity Info. Servs., Inc. v. Debtdomain GLMS Pte Ltd.,* No. 09 Civ. 7589, 2011 WL 3665138, at *2 (S.D.N.Y. Aug. 11, 2011) ("[T]he good cause standard is not satisfied when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.' " (alteration in original) (*quoting Enzymotec Ltd. v. NBTY, Inc.,* 754 F.Supp.2d 527, 536 (E.D.N.Y. 2010))).

For over three years, Magistrate Judge Freeman has closely supervised discovery in this matter, which has been extensive and contentiously litigated. In her estimation, Plaintiffs were not "victims of unfair surprise," but had simply made a "strategic decision" not to prepare an actuarial expert report. (Docket No. 104.) The Court gives great weight to Magistrate Judge Freeman's factual findings with respect to a case that has commanded so much of her attention for so long.

Moreover, the Court agrees with Magistrate Judge Freeman's conclusion that Plaintiffs cannot claim to have been surprised by the position in the Behan & Chaplin Report for several reasons. First, Plaintiffs' counsel was in possession of the Behan & Chaplin Report—in unredacted form—for over a month before requesting permission to present an actuarial expert in rebuttal. In that time, Plaintiffs' counsel made no indications that they believed any rebuttal would be necessary. Though Defendants may have overzealously applied confidentiality designations to the Behan & Chaplin Report, those designations did not prevent Plaintiffs' counsel from presenting their clients with their evaluation of any need for additional expert discovery and certainly did not prevent Plaintiffs' counsel from mentioning—to their adversaries or the Court—that additional discovery might be necessary. Plaintiffs' counsel instead did the opposite, communicating with Defendants and the Court in such a manner as to imply that the expert discovery deadline would be met.

Furthermore, a corporate entity related to Plaintiffs is a defendant in an Illinois state court action involving the Policies, *Huizenga Managers Fund, L.L.C. v. A.R. Ritchies, et al.,* No. 07 CH 09626 (Cook Cty. Ill.) ("*Huizenga*"), and Plaintiffs' counsel is also counsel for that *Huizenga* defendant (*see* Plaintiffs' Objections to the Magistrate Judge's February 17, 2012 Order (Docket No. 106) at 19 n. 4). In *Huizenga,* Plaintiffs' corporate relative employed an actuarial expert to defend the assumptions built into the contract prices for the Policies. The relevant expert reports and depositions from *Huizenga* were even provided by Plaintiffs' counsel to Defendants in this litigation, as ordered by Magistrate Judge Freeman. Though Plaintiffs themselves are not parties to *Huizenga,* they and their counsel were certainly aware of the particular actuarial issues as they relate to the Policies. Similarly, in conducting their bankruptcy, Plaintiffs themselves retained experts to address actuarial issues related to the market value of the Policies.

Additionally, during discovery, Defendants overtly laid a foundation from which to attack the actuarial assumptions built into the contract price. In their submission to Magistrate Judge Freeman and again in their opposition to Plaintiffs' objections, Defendants point to several instances during depositions and other phases of discovery in which Plaintiffs or their witnesses were expressly asked about the actuarial assumptions used to generate the contract price. The record developed during discovery belies Plaintiffs' assertions that they are now the victims of some sort of ambush.

Finally and most fundamentally, Plaintiffs cannot credibly claim that they have been blindsided by expert scrutiny of actuarial assumptions in a case centered upon changes in the value of life insurance policies. As Defendants point out, actuarial assumptions are the most important factor in pricing life insurance policies on the secondary market. Plaintiffs' own witnesses have emphasized this point during depositions.

Accordingly, for substantially the reasons set forth in the Order and for those described herein, the Court adopts the Order's factual and legal analyses and determina-

tions, as well as its substantive rulings, and denies Plaintiffs' request to vacate the Order.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the order by endorsed letter (the "Order") of Magistrate Judge Debra Freeman dated February 17, 2012 (Docket No. 104) is adopted; and it is further

**ORDERED** that the objections (Docket No. 106) of plaintiffs to the Order are denied; and it is finally

**ORDERED** that the parties shall present any further disputes concerning expert discovery to Magistrate Judge Freeman.

**SO ORDERED.**